SINCLAIR REFINING CO., APPELLEE, *v.* CHANEY ET AL., APPELLEES; CHANEY; APPELLANT.

540

(No. 364—Decided March 23, 1961.)

*Mr. Thomas R. Spellerberg,* for appellee Sinclair Refining Company.

*Mr. Samuel R. McKinney,* for appellee Tiffin Savings Bank.

*Mr. Paul F. Flynn,* for appellee France Sales, Inc.

*Mr. Bonford R. Talbert, Jr.,* for appellant.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court in an action to marshal liens and for the sale of real estate.

The appellant, Verna L. Chaney, assigns error in the following particulars:

"1. In granting the motions of the plaintiff, Sinclair Refining Company, and defendants, The Tiffin Savings Bank and France Sales, Inc., for judgment against defendant, Verna L. Chaney, at the hearing on her cross-petition and ruling that other claimants in this suit who previously recorded their interests are superior to her life-lease or life estate on the buildings of the real estate ordered sold, the trial court committed prejudicial error.

"2. The trial court erred in overruling the motion of defendant, Verna L. Chaney, for judgment against The Croghan Colonial Bank and state of Ohio because of their failure to answer or appear at a hearing on her cross-petition."

The judgment of the trial court was entered pursuant to motions made by the defendants, appellees herein, France Sales, Inc., and Tiffin Savings Bank, and by the plaintiff, an appellee herein, Sinclair Refining Company, at the close of defendant-appellant's evidence, that judgment be entered in their favor on the defendant-appellant's cross-petition. The defendant-appellee Tiffin Savings Bank had called one witness, out of order and in the course of defendant-appellant's case on her cross-petition, but since the bank had not rested its case before making its motion for judgment we will consider its motion for judgment as having been made at the close of defendant-appellant's case and not as at the close of its own case. The defendant-appellee Croghan Colonial Bank did not join issue on defendant-appellant's cross-petition, nor did it appear at the hearing thereon.

The trial court, in determining these motions for judgment, was required to follow the rule, and we, in reviewing the trial court's action are required to follow the same rule, quoted with approval by the Supreme Court of Ohio in *Wilkeson* v. *Erskine & Son, Inc.*, 145 Ohio St., 218, and appearing in 39 Ohio Jurisprudence, 802, Trial, Section 183:

"The trial judge, in ruling upon a motion, to direct a verdict or for a nonsuit on the evidence introduced, must not only assume the truth of the evidence in behalf of the party against whom the motion is directed, but must construe the evidence most strongly in favor of that party, or, as it is sometimes ex-

pressed, must give the most favorable interpretation or intendment in his behalf, and adopt the view most favorable to his contention, or consider it in the light most favorable to him, of which such evidence is susceptible. To this end the trial judge should give the party, against whom the motion is made, the benefit of all reasonable inferences that can be drawn from the evidence offered and consider as proved such reasonable inferences favorable to him as the facts proved warrant—as are deducible from the evidence given—without carrying the inferences to an illogical conclusion. In other words, the evidence must be construed favorably to the submission of the case to the jury, and the trial judge should indulge in every possible consideration in favor of such submission.

"* * * Under the present rule, however, if, after giving the evidence such favorable construction, reasonable minds can reasonably come to but one conclusion and that conclusion is adverse to the party against whom the motion is made, the judge should direct a verdict against him."

Such rule is at least equally applicable to a case tried to a court without a jury as it is to a jury trial.

As there is no cross-appeal, and the appeal raises no questions of procedure (except as claimed in the second assignment of error), we will, in determining and disposing of the first assignment of error, confine our opinion and our consideration to the ultimate facts necessary and pertinent to the determination of such assignment. As there is no dispute on this appeal as to the validity or as to the amount of the various liens, the first assignment of error raises the sole question as to whether the liens of the various parties to the action on the real estate herein involved are subject to the estate of appellant herein, as hereinafter specified, in such real estate.

Applying the rule of construction hereinbefore quoted, it appears from the pleadings and evidence that Rufus and Verna Chaney were husband and wife and the parents of the defendant-appellee Earl Chaney; that at all times herein material Verna Chaney lived in, occupied, and was in possession of the buildings on an 80-acre tract of land located in Liberty Township, Seneca County; that Rufus Chaney lived with her on the 80-acre tract of land until his death; that Earl married Louise Chaney and left home prior to 1934 and thereafter, until Janu-

ary 1959, did not reside at any time on the 80-acre tract of land but resided at other places, and after 1939 resided in Clinton Township, Seneca County; that, in 1935, Earl purchased a 78.5-acre tract of land in Liberty Township adjoining the 80-acre tract of land then owned by his parents but never lived on such tract of land; and that at all times when the mortgages, hereinafter mentioned, were executed, and the judgments, hereinafter mentioned, were entered, Earl farmed and possessed all of the 78.5-acre tract of land and farmed and occupied all of the 80-acre tract of land with the exception of the buildings on the 80-acre tract of land. It is undisputed in the pleadings or, at this stage of the case, in the evidence, that during the period of time herein pertinent the following events took place:

1. *March 20, 1946.* Rufus, Verna, Earl (*sic*) and Louise Chaney conveyed by warranty deed the 78.5 acres to Earl Chaney. This deed was filed for record on March 21, 1946.

2. *March 21, 1946.* Rufus and Earl Chaney entered into a partnership agreement, approved and consented to by their respective wives, whereby they agreed to farm the 80-acre and 78.5-acre tracts of land as partners, and to purchase certain life insurance for the security of the individuals, with the proviso that, in the event of the death of Rufus before Earl, the policy on Earl's life should become his property except that Verna shall be retained as beneficiary thereon in order to meet and provide for monthly annuity payments of $125 each. The agreement further provided that upon the death of Rufus (since life insurance on his life was not reasonably obtainable due to his then age of 70) Earl "shall be and is hereby given, the full and complete title to all of said property * * * with the following stipulation: That Verna L. Chaney * * * shall be and is hereby given a life estate for and during the term of her natural life upon all buildings on Parcel Number One (1) above described [the 80-acre tract] and with the further stipulation that the said Earl J. Chaney shall pay or cause to be paid to his mother the sum of one hundred twenty-five dollars ($125) per month as an anuity for as long as she may live. In other words, this provision for a one hundred twenty-five dollar ($125) monthly annuity shall be, and is hereby created, as a lien upon all property of the partnership in order to secure its payment." Although this agreement was executed with all of

the formalities of a conveyance it has never been filed for record.

3. *March 21, 1946.* Rufus and Verna Chaney conveyed by warranty deed, without any reservations, the 80-acre tract to Earl Chaney. *This deed was kept in escrow during Rufus' life, delivered to Earl upon his death, and was not filed for record until April 21, 1952.*

4. *March 22, 1946.* Rufus and Verna Chaney executed a mortgage on the 80-acre tract to Tiffin Savings Bank, which was filed for record on March 27, 1946. This mortgage was cancelled of record on April 1, 1954.

5. *September 15, 1951.* Rufus Chaney died.

6. *March 28, 1952.* Earl Chaney and Verna Chaney entered into an agreement titled "Contract and Bill of Sale," joined in by Louise, whereby they agreed that the "partnership agreement dated March 21, 1946, * * * is hereby terminated and that * * * all the payments and terms of payment therein specified have been waived by both parties, and that their agreement as to matters of payment and the transfer of property is substituted therefor," and further that Verna would transfer to Earl all her title to any real or personal property of the former partnership, that Earl does "hereby GIVE, GRANT, BARGAIN, SELL AND LEASE unto the said Verna L. Chaney for her exclusive use and benefit during the term of her natural life the buildings on the * * * [80-acre tract] * * * owned by the said Earl J. Chaney," and further that Earl shall pay to Verna "during the term of her natural life the sum of one hundred thirty-five and No/100 Dollars ($135) per month payable each and every month thereafter," that he shall continue her as beneficiary of the policies of insurance taken on his life by virtue of the terms of the previous partnership agreement, and that he will make a will in "such a manner so as to impress his entire estate upon his death or so much thereof as is necessary to guarantee the payments" of $135 per month to Verna. This agreement was executed with all of the formalities of a conveyance but was not filed for record until October 22, 1959, during the pendency of this action.

7. *April 21, 1952.* See March 21, 1946, deed, *supra.*

8. *April 1, 1954.* Earl and Louise Chaney executed a mortgage on both the 80-acre tract and the 78.5-acre tract to Tiffin Savings Bank, which was filed for record on April 1, 1954, and

constitutes one of the mortgage liens upon which the defendant-appellee Tiffin Savings Bank rests its claim herein.

9. *March 27, 1957.* France Sales, Inc., a defendant-appellee, recovered a judgment in the Common Pleas Court of Seneca County against Earl Chaney. Execution was levied on this judgment on both the 80-acre and 78.5-acre tracts on April 4, 1957.

10. *August 9, 1957.* Sinclair Refining Company, plaintiff-appellee, recovered a judgment in the Common Pleas Court of Seneca County against Earl Chaney and R. M. Chaney (*sic*). Certificate of judgment was issued on January 3, 1959, and filed on that date in the Local and Foreign Judgment Record in the office of the Clerk of Courts of Seneca County.

11. *March 14, 1958.* Earl and Louise Chaney executed a mortgage on both the 80-acre tract and the 78.5-acre tract to Tiffin Savings Bank, which was filed for record on March 14, 1958, and constitutes one of the mortgage liens upon which the defendant-appellee Tiffin Savings Bank rests its claim herein.

12. *December , 1958.* Croghan Colonial Bank, a defendant-appellee, recovered a judgment in the Common Pleas Court of Sandusky County against Earl Chaney. Certificate of judgment was issued and filed on December 15, 1958, in the Local and Foreign Judgment Record in the office of the Clerk of Courts of Seneca County.

13. *January 27, 1960.* Defendant-appellant Verna Chaney claims in her answer and cross-petition that there is due to her from Earl Chaney as and for her annuity payments during the years 1958 and 1959 the unpaid balance of $1,500.

As appears from the first assignment of error, the trial court entered judgment finding that "a life estate reserved to the defendant, Verna Chaney, on the premises described in said cross-petition, is valid on October 22, 1959, except as against the plaintiff and said defendants" and subordinate to the liens of the plaintiff and all of the other defendants.

Although the plaintiff-appellee and defendant-appellees have not filed a cross-appeal and do not claim any error of the trial court in its determination as to the validity of defendant-appellant's life estate, this court has the prerogative of determining any error appearing of record and, on the facts of this case, cannot and will not proceed to further determine the

claims of error made by appellant until it disposes of an error appearing of record with respect to the extent of appellant's estate in the premises in question. In short, we cannot determine whether an estate is paramount or subordinate unless we first define the estate.

Notwithstanding appellant may have been entitled under the agreement of March 21, 1946, upon the death of her husband to a life estate in the two tracts of land and to a lien on the two tracts of land for the payment of the annuity provided in that agreement, nevertheless under the agreement of March 28, 1952, executed with all of the formalities of a conveyance, she waived any and all rights under the former agreement and substituted the provisions of the latter agreement therefor. The agreement of March 28, 1952, did not give her a *life estate* in anything. It merely purports to give, grant, bargain, sell and lease to her for "her exclusive use and benefit during the term of her natural life the buildings on the" 80-acre tract. This has no reference whatsoever to the 78.5-acre tract of land, does not purport to convey legal title, or a freehold interest in land, and gives the appellant merely the exclusive use and benefit of buildings on the 80-acre tract during her natural life. Indeed, although we do not decide so, there may be some question as to her right to permit anyone else to use these buildings. She does not have a life estate, in the legal sense, but, at most, merely a life lease. Nor does the agreement of March 28, 1952, purport to give her a lien on any lands for the payment of the annuity payments provided for therein. The only security for these annuity payments is a promise by Earl Chaney to retain her as beneficiary on certain life insurance policies and to make a will so as to "impress upon his entire estate *upon his death* or so much thereof as is necessary to guarantee the payments." The annuity payments do not constitute a right, title, interest, or lien upon any of the lands herein involved and may not be considered in the marshalling of liens herein.

By the terms of and by virtue of the legal effect of the two agreements to which Verna Chaney and Earl Chaney were parties, and as between Verna Chaney and Earl Chaney, Verna had a limited life lease in the buildings on the 80-acre tract. At the time of the execution of the mortgages to the Tiffin

Savings Bank and at the time of the acquisition of the various judgment liens this limited life lease was not of record. Not being of record, it then becomes a question whether the rights of the mortgage lienees and the judgment lienees were paramount or subordinate to the limited life lease.

Taking the view which the majority of the court does, we are not concerned whether any of the lienees had any actual knowledge of the rights of Verna Chaney under her limited life lease or had any actual knowledge of the fact that she was in possession of the buildings on the 80-acre tract of land.

In Ohio judgment liens, of the type which the plaintiff and the various defendants other than the Tiffin Savings Bank claim, are the creation of and governed by statutory provisions. The judgment liens herein were acquired under the provisions of Section 2329.02 *et seq.*, Revised Code. The first of these sections, at all times when these liens were acquired, provided that the judgment should be a lien "upon lands and tenements *of each judgment debtor.*" (Emphasis added.) Section 2329.03, Revised Code, provides that "lands and tenements *of a judgment debtor* shall be bound with a lien." (Emphasis added.) Section 2329.07, Revised Code, dealing with dormancy of judgments, provides that under certain circumstances "such judgment shall be dormant and shall not operate as a lien *upon the estate of the judgment debtor.*" (Emphasis added.) These statutory provisions confine the judgment lien, in each case, to that which actually belongs to the judgment debtor. There is nothing which extends this lien to that which belongs to anyone else, or to that which appears of record to belong to the judgment debtor. The judgment creditor's rights are limited to those provided by statute and a judgment creditor's rights as to a lien on real estate do not rise to those of a bona fide purchaser.

In *Hulshoff, Trustee,* v. *Bowman,* 19 C. C., 554, 10 C. D., 343, at page 558, the court said:

"That the lien of a judgment or levy attaches only to the interest of the debtor; that is, to his real interest in the property, without respect to what his apparent interest may be, and subject to all equities, though secret or latent, is well settled by the authorities. 2 Freeman on Judgments, Secs. 338, 356, 357; *Miller* v. *Albright,* 60 Ohio St., 48."

In *Miller* v. *Albright*, 60 Ohio St., 48, at page 51, Judge Williams, said:

"* * * And, it is a well established rule that the lien of a judgment attaches only to such beneficial interest in land as the judgment debtor has at the time of its rendition; and, when the rule is not otherwise affected by statutory regulation, as in cases of mortgages and other instruments which become effectual against third persons only on proper registration, the judgment lien is subject to all equities concerning the land which could be successfully asserted against the debtor. This rule is declared in *Tousley* v. *Tousley*, 5 Ohio St., 87, where it is said that so far as the statute goes in giving a judgment creditor preference over mortgages not perfected by delivery to the recorder, 'his rights are absolute, but for everything else he is remitted to general principles, and on general principles it is very clear that he acquires a lien only upon the interest of his debtor, and is bound to yield to every claim that could be successfully asserted against him.' * * * The levy of an execution issued on the judgment adds nothing to the dignity of the lien, or the equity of the creditor. It is merely a step in the enforcement of the judgment or for the preservation of the lien, and has no other effect than to limit the lien to the property levied on when that is sufficient to satisfy the judgment. The levy, like the judgment, reaches nothing more than the interest which the debtor has in the property. * * *"

See, also, *Williams* v. *Johns*, 34 Ohio App., 230, at page 232; *Spitzer* v. *Vanselow*, 22 Ohio Law Abs., 377; and *Butcher* v. *Kagey Lumber Co.*, 164 Ohio St., 85.

We conclude from the statutes and these various authorities that the judgment liens of the appellees, France Sales, Inc., Sinclair Refining Company, and the Croghan Colonial Bank, were subordinate to the rights of the appellant under her limited life lease in the buildings on the 80-acre tract of land, notwithstanding that such rights were not matters of public record, and that the trial court erred in determining otherwise.

The question remains whether appellant's rights in the buildings on the 80-acre tract under her limited life lease were paramount or subordinate to the mortgage liens of the defendant-appellee Tiffin Savings Bank. By virtue of the provisions of the recording statutes, the Tiffin Savings Bank would be pro-

tected as a bona fide purchaser and the rights of appellant in the buildings located on the 80-acre tract would be subordinate to the two mortgage liens of the bank unless her being in possession of the buildings constituted constructive notice to the bank of her rights therein.

As a general rule in Ohio the purchaser of land in the actual possession of a third person is chargeable with constructive notice of the occupant's title and equities even though the fact of such possession is not actally known to the purchaser. *Kelley* v. *Stanbery*, 13 Ohio, 408; *McKinzie* v. *Perrill*, 15 Ohio St., 162; *Ranney* v. *Hardy—Zeller* v. *Bading*, 43 Ohio St., 157; *Dunkel* v. *Hedges*, 15 Ohio App., 259, 265; *Butcher* v. *Kagey Lumber Co., supra* (164 Ohio St., 85), at page 90; *Kemp* v. *Feldman*, 84 Ohio App., 154, 158; 40 Ohio Jurisprudence, 1025, Vendor and Purchaser, Section 115; 33 Ohio Jurisprudence (2d), 281, Landlord and Tenant, Section 10; *Parsons* v. *Weinstein, Trustee*, 19 Ohio App., 521, 526.

In *McKinzie* v. *Perrill, supra* (15 Ohio St., 162), Chief Justice Brinkerhoff stated, at page 168:

"* * * And, in respect to the matter of notice, it may here be remarked, once for all, that at the time Samuel Turner undertook to convey to his son, and he to the defendant Perrill, the plaintiff was in the actual possession of the entire tract, and both Perrill and the Turners, therefore, were conclusively chargeable with notice of the plaintiff's equitable title, *whatever that might prove to be. * * *"* (Emphasis added.)

In *Ranney* v. *Hardy—Zeller* v. *Bading, supra* (43 Ohio St., 157), Judge Okey stated at page 159:

"* * * And the other case (*Zeller* v. *Bading*) presenting the question whether knowledge by the mortgagee, at the time he accepted the mortgage, that the purchaser was in possession, was material, we answer the question in the negative. * * * and where, as in the case now before us, the premises are occupied by a man with his family as a homestead, no well considered case can be found, aside from those controlled by statutory provision, in which was held that such possession was not notice to subsequent purchasers and mortgagees of the rights and interests of such occupant, although such purchaser or mortgagee did not know the premises were occupied. * * * If the possession is not exclusive, or is not of a character

to fairly give information that the occupant is asserting dominion over the property under some claim of right or authority, it will not operate as notice. * * * But neither of the cases before us is within cases of that class.''

And, in *Parsons* v. *Weinstein, supra* (19 Ohio App., 521), Judge Pardee said, at page 526:

''These cases, therefore, conclusively establish that *in equity* the lessee in actual possession under the defectively executed lease, and the one in possession under the properly executed but not recorded lease, are entitld to hold possession of the property for the full period of their leases as against the plaintiff, and this is so whether or not the plaintiff had actual notice of the occupancy of the premises at the time he purchased the mortgage, or whether or not his predecessor in title had actual notice of said occupation of said property.''

Thus, it must be observed that if appellant's possession of the buildings on the 80-acre tract of land was of such character as to come within the general rule, then, although the record title to the premises was in Earl Chaney, her son, at the time he executed the two mortgages of March 22, 1946, and March 14, 1958, to the Tiffin Savings Bank, the mortgagee took its mortgages subject to appellant's rights, notwithstanding that it may not have had any actual notice of her possession.

There is no allegation, or proof, of fraud on the part of appellant, or of any conduct by her constituting estoppel, which would withdraw the protection of this general rule from her. Though she may have had knowledge that her son was negotiating with the bank for either or both of these mortgage loans, her failure to notify the bank of her interest in the premises could not be in derogation of her rights unless she had a duty to speak. No court has ever, to our knowledge, required anyone within the protection of the general rule to take any action in addition to continuing his possession in order to retain the protection of the general rule.

The appellee bank, however, must rest its claim that appellant does not come within the general rule on the facts that the conveyance on which the son's title is based was from mother to son, that the mother's possession of the premises after conveyance was essentially the same as her possession before conveyance, that the son was likewise in possession of

the 80-acre tract, and that, by reason of the relationship between the parties and the fact that the appellant's possession was apparently through the son, her possession, even if known, would not be of the character to warn or apprise anyone of her rights in the premises.

There is no claim that her interest, being confined to buildings, constitutes an interest in personalty as distinguished from or severed from realty and, in order that there may be no confusion in this respect, we conclude that the agreement on which her rights are based contemplates that the buildings will not be severed from the realty and that her rights include a right as long as the buildings exist of continued possession and occupancy of the land upon which the buildings stand and, to such extent, constitute an interest in such land.

We have been unable to find in Ohio any cases involving the exact or a similar factual situation upon which the bank may rest its claim that appellant's possession is of such character to except it from the general rule.

Defendant-appellee bank relies strongly on the following quotation from 1 Merrill on Notice, 161, Section 134:

"This problem of the possession in apparent subordination to the record title comes up again in cases where the owner of the unrecorded claim and the record owner are in possession at the same time. In such a case the occupancy well may be presumed to be by permission of the record owner and in recognition of his title. Otherwise one would expect a struggle for sole possession. Hence there is much merit in the judicial position that *joint occupancy* with the record owner will not arouse inquiry as to any right inhering in the apparent stranger to the title. This rule is applied to cases where the vendor and the vendee by an unrecorded instrument remain in possession *together*, where there is a similar possession under a known or recorded instrument with a trust or lien or other claim in favor of the grantor, or where a legal owner and a proprietor of an unrecorded claim are occupying the premises. Other instances in which this rule has been applied include *common* possession of the record owner and his lessee, and the occupancy of a room by the record owner in the residence of the claimant. * * *." (Emphasis added.)

A majority of the members of this court cannot subscribe

to the proposition that this paragraph is controlling in the case before us. The conclusions stated therein rest substantially, if not entirely, on a joint or common possession. Under the rule of construction which we must apply at this stage of the case, the evidence is that the possession of the appellant of the buildings on the 80-acre tract was exclusive and that Earl Chaney had no possession of these buildings but had possession of the fields only. At this stage of the case there is no evidence to support a finding of joint or common possession of the premises which the appellant has an unrecorded interest in.

Appellee bank then relies on the following quotation from 39 American Jurisprudence, 243, Notice and Notices, Section 19:

"As regards the effect of a grantor's continued possession of land after execution of his deed as notice of a claim adverse to the title conveyed, the authorities are far from being in accord. On the one hand, a number of authorities apply the general rule that possession is notice of all the equitable and other rights of the possessor, thus making the continued possession of a grantor quite as efficacious a notice of his claims as the possession of a stranger to the record title would be. The greater number of cases, however, have taken the position that the possession of a grantor of land after conveyance is not inconsistent with the title which he has conveyed, and that, therefore, one of the elements of constructive notice is lacking. These cases hold that the general rule that possession of land is notice to a purchaser of the possessor's title does not apply *to a grantor remaining in possession after giving a full recorded deed,* so as to require a purchaser or encumbrancer from his grantee to inquire whether he had reserved any interest in the land conveyed, since, so far as the purchaser or encumbrancer is concerned, the grantor's deed is conclusive, he having declared thereby that he makes no reservation, the effect of the rule being *that he is estopped from setting up any secret arrangement by which his grant is impaired.* In short, these cases take the view that a purchaser is justified in relying on the ostensible title conferred by the deed, and in inferring that the grantor's possession is merely permissive, and not in antagonism to his grant, and, therefore,

that his continued possession is not notice of other rights."
(Emphasis added.)

There are several reasons why a majority of the members of this court cannot consider the rule expressed in the latter part of the foregoing quotation as being here applicable. At this stage of the case it is undisputed in evidence that, except as a partner of Rufus Chaney, Earl Chaney did not have any title to the 80-acre tract of land prior to the death of Rufus, and that the deed under which Earl was conveyed title was executed on March 21, 1946, and placed in escrow subject to and until the death of Rufus, whereupon it was delivered to him and thereafter recorded on April 21, 1952. The effective date of the conveyance was, therefore, on the date on which the escrow was to be performed, the date of Rufus' death on September 15, 1951. There was no agreement or reservation made on that date of any title or interest in the appellant, Verna Chaney. As of that date, any title or interest she had in the 80-acre tract was that provided under the agreement of March 21, 1946, which was superseded by the agreement thereafter executed, after Rufus' death, on March 28, 1952. By virtue of the former agreement, Verna was to have a life *estate* upon all the buildings on the 80-acre tract and a lien upon all property of the partnership to secure her monthly annuity. By the latter agreement, Verna waived all her rights under the former and there was substituted therefor merely a limited life *lease* on the buildings on the 80-acre tract, as hereinbefore set forth. Verna's possession before the death of Rufus was in conjunction with her husband and had reference to all the partnership property, from the death of Rufus to the date of the second agreement it had reference to a life *estate,* and since the execution of the second agreement it has had reference to merely a limited life *lease.* Even were we to determine that the deed of Verna (if she herself had and conveyed any title at all) was conclusive against her it could be so only as to interests retained at the time when it become effective and could not be conclusive of an after-acquired right of possession in the premises.

Appellee bank says we must then give effect to the rule of law expressed in 1 Merrill on Notice, 163, Section 137:

"The variety of *mixed* possession most likely to lull the

observer into satisfaction with the apparent ownership is that in which the record title inheres in one of two or more persons living upon the premises in a familial relationship. It seems extremely harsh to affect the stranger with a duty to inquire whether some other member of the family in residence may have a hostile claim to the land, not apparent of record. The cases unanimously refuse to impose this duty upon him.'' (Emphasis added.)

In support of this statement the appellee bank cites the case of *Lindley* v. *Martindale*, 78 Iowa, 379, 43 N. W., 233, as being most closely allied to the case before us. However, an examination of the *Lindley case* reveals that title and possession of the 200-acre tract in question was claimed in its entirety by the mother, although her husband and son had farmed same and had possession thereof and the son had record title thereof. The possession of the mother was *mixed*, common or joint with that of the son, and the Iowa court also concluded that the mother's conduct had estopped her from claiming the 200 acres as against the mortgagee of her son, which mortgage loan had been actively procured by her husband whom she permitted to represent her in all legal matters. A majority of this court do not think that this Iowa case is applicable to the case before us.

As we have heretofore determined, there was no mixed, joint or common possession of the 80-acre tract of land by the appellant herein and her son. During all the times pertinent to the transactions herein involved the son neither lived on the 80-acre tract in question or the adjoining 78.5-acre tract but lived some several miles away.

A majority of the members of this court are therefore of the opinion that on the basis of the evidence now before us, construed under the rule quoted in the *Wilkeson case, supra* (145 Ohio St., 218), the possession by Verna Chaney of the buildings on the 80-acre tract was of such character as to come within the general rule and to give to the appellee bank constructive notice of the rights she had in such buildings and the land upon which they stood under the agreement executed by her with her son on March 28, 1952, notwithstanding the fact that the appellee bank may not have had any actual knowledge of such possession and nowithstanding that the agreement

of March 28, 1952, was not of record at the time when the mortgages in question were executed, delivered and filed for record. As is apparent from the decision of the Supreme Court in *Ranney* v. *Hardy*—*Zeller* v. *Bading, supra,* her possession was exclusive, and of a character to fairly give information that she was asserting dominion over the buildings under some claim of right or authority, and operated as notice of same.

Taking the view of the case which we have here done, we find it is not necessary to give consideration to appellant's second assignment of error, except as hereinafter stated.

In summary, it is the opinion of all the members of this court that at this stage of the case there is no evidence to support a judgment that the appellant has a valid life estate in the 80-acre and the 78.5-acre tract of land and that the trial court committed error in such determination. In the opinion of all the members of this court the evidence at this stage of the case is sufficient to support merely a determination that the appellant has a limited life lease in the buildings on the 80-acre tract of land (which, as long as such buildings exist during her lifetime, includes a right of possession of the ground upon which such buildings are situated). It is further the opinion of all the members of this court that, on the basis of the evidence herein, the monthly annuity payments claimed due by appellant do not constitute a lien on any of the lands herein and may not be considered in the marshalling of liens. It is further the opinion of all the members of this court that, on the evidence herein, the judgment liens of the France Sales, Inc., Sinclair Refining Company and Croghan Colonial Bank, are subordinate to the aforesaid estate of appellant in the 80-acre tract, and that the trial court committed error in determining that such judgment liens were paramount thereto. It is finally the opinion of a majority of the members of this court that, on the evidence herein, the mortgage liens of the Tiffin Savings Bank are subordinate to the aforesaid estate of appellant in the 80-acre tract of land and that the trial court committed error in determining that such mortgage liens were paramount thereto.

For the errors of the trial court, which errors were prejudicial to the appellant, the judgment of the trial court appealed from must be, and hereby is, vacated and set aside, and

the cause is remanded to the trial court with instructions to overrule the motions for judgment of the Sinclair Refining Company, the Tiffin Savings Bank, and the France Sales, Inc., and for further proceedings according to law, with costs to abide the final determination of the action.

The Sinclair Refining Company, Tiffin Savings Bank and France Sales, Inc., not having had the opportunity to present their cases may, on the overruling of such motions, offer evidence in their own behalf. The Croghan Colonial Bank, not having joined issue on appellant's cross-petition nor having appeared at the original hearing thereof, may not now present evidence in its behalf, and the trial court must hold its judgment lien subordinate to appellant's estate.

*Judgment accordingly.*

YOUNGER, J., concurs.

MIDDLETON, J., dissenting in part. I dissent from the opinion of the majority of the court in its findings and conclusions that the mortgage liens of the defendant Tiffin Savings Bank are subordinate to the appellant's rights under her lease on the buildings on the 80-acre tract.

I differ with the majority of the court on the sole issue of whether appellant's possession of the buildings was of such a character and to such an extent as to place the Tiffin Savings Bank upon inquiry as to her interest, if any, as affecting the title to the real estate.

The Tiffin Savings Bank by virtue of Section 5301.25, Revised Code, is a bona fide purchaser and its mortgage liens are superior to the appellant's rights under her lease, unless the appellant's possession of the buildings constitutes constructive notice to the bank of her interest in the real estate covered by the mortgage.

It will be conceded that if the nature, character and extent of the appellant's possession was such as to put the bank upon inquiry as to her interest or equities in the real estate, then its mortgage liens would be subordinate to appellant's rights under her lease.

The evidence appearing in the record does not in my opinion support the claim that appellant's possession was such

as to constitute constructive notice to the Tiffin Bank of her interest or equity in the real estate or that it was of such a character as to place the bank upon inquiry before accepting the real estate as security for its loan.

The appellant, Verna L. Chaney, is the widowed mother of Earl Chaney, the mortgagor in the bank's mortgages. The appellant and her deceased husband, parents of Earl Chaney, were the grantors in the deed conveying the 80 acres in question to their son, Earl Chaney. Their deed is one of general warranty and contained no reservations, or exceptions affecting the title.

The lease provides that Earl Chaney does "grant, bargain, sell and lease unto the said Verna L. Chaney, for her exclusive use and benefit during the term of her natural life the buildings on the * * * 80 acres * * *."

The evidence is silent as to the nature, number, or character of the buildings covered by the lease except for the home and the barn, nor does anything appear in the record whether the appellants ever used any buildings on the farm other than the home. As far as the record reveals the buildings may have been used by Earl Chaney in his exclusive cultivation of the 80 acres.

The only evidence as far as the record discloses to support the claim of constructive notice is the fact that the appellant, the mother of Earl Chaney, one of the grantors from whom Earl Chaney received his title, continued to live in the home after conveyance of the farm to her son.

It must be borne in mind that this is not a case where the one in possession has exclusive possession of the entire property sold or mortgaged but a case where such person was limited to possession and use of the buildings on the real estate which was exclusively cultivated by the owner of the record title.

Counsel for the appellant has not cited, nor have the members of this court been able to find, any Ohio case where the one in possession claiming rights by reason of constructive notice was a member of the same family holding record title. In all the Ohio cases cited the party claiming rights by virtue of possession of the real estate was a stranger to those holding the record title.

In *Munn* v. *Achey*, 110 Ala., 628, 18 So., 299, we find the following:

"* * * In discussing and allowing possession as constructive notice, the courts lay quite as much stress upon the fact *that the vendor or mortgagor is out, as that the claimant of the equity, or unrecorded legal right is in, posssesion. In this case an insuperable difficulty in the way of appellant arises from the want of the essential element of exclusiveness in her holding. Although she may have had a sort of possession or occupancy, that of her sons, the mortgagors, was of a much more decided character.* A clear, unincumbered record title was found in them; they were in the apparent and open possession of the property, under claim of entire ownership; *and the mere fact that their widowed mother, who was in a measure under their care and protection, resided on the place and cultivated a portion of the land, would not suggest to an intending purchaser, inspecting the property, that she had any secret, legal or equitable claim in hostility to her sons, and, hence, would not charge the mortgagee with constructive notice of her asserted vendor's lien under a supposed transfer from her husband.* * * *"* (Emphasis added in part.)

As stated in *Lindley* v. *Martindale*, 78 Iowa, 379, 43 N. W., 233, possession, to constitute notice, must be open, visible, *exclusive* and *inconsistent* with the record title.

"* * * If the possession is not exclusive, or is not of a character to fairly give information that the occupant is asserting dominion over the property under some claim of right or authority, it will not operate as notice. * * *"* *Ranney* v. *Hardy* —*Zeller* v. *Bading*, 43 Ohio St., 157.

"The variety of mixed possession most likely to lull the observer into satisfaction with the apparent ownership is that in which the record title inheres in one of two or more persons living upon the premises in a familial relationship. It seems extremely harsh to affect the stranger with a duty to inquire whether some other member of the family in residence may have a hostile claim to the land, not apparent of record. The cases unanimously refuse to impose this duty upon him. One of the most common situations is where the record title is in the husband; and the wife, or reputed wife, living with him, has an outstanding claim." 1 Merrill on Notice, 163, Section 137.

Earl Chaney's occupancy and cultivation of the entire farm was accompanied by all the usual incidents of ownership. In 41 Ohio Jurisprudence (2d), 41 and 42, Sections 19 and 20, in discussing the character of possession necessary to show rights evidenced by such possession, it is stated:

"On the other hand—and consistently with the principle that whether notice will be imputed from the existence of facts exciting inquiry depends to some extent upon whether the particular right, title, or interest in question is of a sort reasonably suggested by the circumstances—it appears that the constructive notice conveyed by possession may, in some particulars at least, be restricted by the *apparent* character of the right or title referable to the possession. * * * And if outstanding possession of real estate is consistent with the facts appearing of record, a purchaser is not ordinarily charged with notice of some different or additional right. In the latter case, the generality of notice arising from possession is restricted by the particular title recorded.

"* * * *What will constitute such possession of land as to put a purchaser upon inquiry is a question which must depend upon the circumstances of each case; no strict rule can be laid down. At any rate, the possession must be of an adverse character not only in fact but in appearance as well, and must fairly give information that the occupant is asserting dominion over the property under some claim of right or authority. * * *"* (Emphasis added.)

The subject of what constitutes notice to a mortgagee is discussed in 37 Ohio Jurisprudence (2d), 338, Section 154, and we find therein stated the following:

"In regard to the character of the possession, a mortgagee will be chargeable with notice of prior equities where there has been actual, exclusive, and notorious possession of the property by the holder of such equities. *If the possession is not exclusive, or is not of a character to give information that the occupant is asserting dominion over the property under some claim or right or authority, it will not operate as notice. There must be something in the acts which accompany possession of property, in order to give constructive notice, which can be seen and understood—something that will induce inquiry—and which will naturally raise the question as to who may have rights there. * * *,"* (Emphasis added.)

In this action, the appellant was one of the grantors in the deed of general warranty conveying the 80 acres to her son, Earl Chaney. The record further shows that she knew that her son was negotiating a loan from the Tiffin Bank and using the 80 acres as part security for the loan and further that a part of the money to be secured from such loan would be used to discharge a prior mortgage on the 80-acre tract, upon which prior mortgage she was liable.

The contract of lease was not placed on record until after the order of sale of the 80 acres was issued in the present action.

It is apparent from the record that the appellant intentionally concealed from the Tiffin Bank any claim or interest in the real estate she might have by reason of her lease of the buildings. On cross-examination, the appellant testified as follows:

"35. Isn't it the first time, in October, 1959, that you told anybody about this life estate? Isn't it true? A. What?

"36. You never told anybody involved in this today that you had any rights in this property. Is that true? If not, tell me where it is not true. A. Your question?

"37. Up to the day of the actual sale you never said anything to the people here that you are interested in that property, or had any rights in this property? A. We had hopes of getting the money and wouldn't have to have this mess.

"38. And wouldn't have to disclose the life estate? A. We had hopes of getting it settled without a smear about this whole thing."

Appellant's possession of the buildings under the conditions and circumstances shown in the record was not of such a character as to be inconsistent with a clear title in Earl Chaney, which appellant had conveyed to him, and was not of such a character as to constitute constructive notice of any hostile interest claimed in the real estate.

As hereinbefore stated, what constitutes constructive notice depends upon the *circumstances of each case*. In the instant case the record furnishes ample and convincing evidence that the possession of the buildings by the appellant was not of such a character as to put the Tiffin Bank upon inquiry as to the nature of her possession. The trial court in weighing the

evidence was fully justified in holding that the mortgage liens of the Tiffin Bank were superior to the appellant's lease on the buildings. To this extent appellant's first assignment of error, in my opinion, is without merit, and the judgment of the trial court should be affirmed.