*Judgment reversed and final judgment for appellant.*

CARTER and BENNETT, JJ., concur.

WALDOCK *v.* BEDELL ET AL., APPELLANTS; FEDERAL LAND BANK OF LOUISVILLE ET AL., APPELLEES.

(Decided May 2, 1938.)

Mr. *Earl S. Miller,* for George Waldock.

*Messrs. King, Flynn & Frohman,* for The Third National Exchange Bank, appellant.

Mr. *W. R. Pruner,* for Federal Land Bank of Louisville and Elloea Brownell, appellees.

LLOYD, J. On April 11, 1933, July 30, 1934, and November 9, 1934, The Third National Exchange Bank of Sandusky, in separate actions brought by it in the Court of Common Pleas of Erie county, obtained three several, personal, money judgments against Harry N. and Alda S. Bedell. Executions were issued on these judgments to the sheriff of Erie county but no levy was made thereunder on any property of the Bedells. On September 11, 1935, a certificate of the first-obtained judgment was duly filed in the office of the Clerk of the Court of Common Pleas of Huron county and on September 12, 1935, certificates of the other two judgments were likewise filed in the office of the Clerk of the Court of Common Pleas of Huron county, but executions were not issued and levied in Huron county on any of these judgments. On October 29, 1935, Elloea Brownell, in an action brought by her in the Court of Common Pleas of Huron county, obtained a judgment for $3,137.50 and costs against the Bedells and on April 4, 1936, a certificate of such judgment was duly filed in the office of the Clerk of the Court of Common Pleas of Huron county. On October 19, 1936, an execution was issued on this judgment and levy made on certain Huron county real estate owned by the Bedells.

On September 9, 1936, Waldock, a judgment creditor, commenced an action in the Huron county Court of Common Pleas to foreclose an alleged judgment lien on the Huron county real estate of the Bedells, they, the above named Sandusky bank, The Federal Land

Bank of Louisville and Brownell being named as defendants therein. The Court of Common Pleas decreed the Brownell judgment to be prior to those of the Sandusky bank. From this finding and decree the Sandusky bank appeals to this court on questions of law.

The sole problem presented is whether the lien of the Brownell judgment is prior or subsequent to those of the judgments of the Sandusky bank, there being no dispute as to the status of the liens of Waldock and the Louisville bank.

It is claimed that the Brownell judgment is the prior lien because an execution was issued thereon within a year after its entry and a levy made on the Huron county real estate of the Bedells, whereas the bank did not, in addition to the filing of certificates of its judgments, issue executions thereon and levy on the real estate. This contention is based on Section 11708, General Code, which reads:

"No judgment on which execution is not issued and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of a debtor to the prejudice of any other bona fide judgment creditor."

It is claimed that this section is repugnant to and inconsistent with Section 11656 *et seq.*, General Code, the so-called New Judgment Lien Law passed by the General Assembly on May 16, 1935, effective August 30, 1935. An examination of the record of its passage, as it appears in 116 Ohio Laws, at page 273, discloses that all of the previously existing statutory sections relating to the subject of this legislation were expressly repealed except Section 11708, General Code, to which, therefore, must attach some purpose, unless we pass it by with the thought that its repeal was forgotten; and, unless it is impossible to harmonize these statutory provisions so as to give effect to all of them,

all of them must be considered to be valid and in force.

Section 11656, General Code, provides, insofar as is pertinent to the instant question, that:

"Any judgment or decree rendered by any court of general jurisdiction (including district courts of the United States) within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time when there shall have been filed in the office of the clerk of the Court of Common Pleas of such county a certificate of such judgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment creditor or creditors and judgment debtor or debtors, the amount of the judgment and costs, the rate of interest, (if the judgment provides for interest), and the date from which such interest accrues, the date of rendition of the judgment and the volume and page of the journal entry thereof."

This section provides no more than that the filing of a certificate of judgment in the office of the clerk of the Court of Common Pleas shall make the judgment a lien on the lands and tenements of the judgment debtor in the county where filed, but does not say that it shall thereby become *ipso facto* prior to any or all other liens thereon.

Section 11656-1, General Code, provides that lands and tenements of a judgment debtor shall also be bound with a lien to satisfy the judgment from the time when the same are seized in execution without the filing of a certificate of judgment. A lien thus acquired dates from the seizure of specifically described property, whereas by the filing of a certificate of judgment a lien is acquired for a year after the entry of the judgment upon any land of the judgment debtor in the county where the certificate is filed without the necessity of particularly describing it. But in either case, if execution is not issued and levied before

the expiration of one year after its rendition, the judgment would not operate as a lien on the estate of the judgment debtor to the prejudice of any other bona fide judgment creditor. The only apparent way in which such prejudice could arise would seem to be in the precedence of the lien over that acquired by another judgment creditor.

Section 11663, General Code, provides that:

"If neither execution on a judgment rendered in a court of record * * * in the county in which such judgment was rendered be issued, nor a certificate of judgment for obtaining a lien upon lands and tenements be issued and filed * * * within five years from the date of such judgment or within five years from the date of the issuance of the last execution thereon or the issuance and filing of the last such certificate thereof, whichever be later, then such judgment shall be dormant and shall not operate as a lien upon the estate of the judgment debtor."

The remainder of this section similarly provides as to liens obtained in counties other than that in which the judgment was secured. The judgment is the foundation of a thereafter acquired lien. No judgment, no lien; and if the judgment becomes dormant, or if, as provided in Section 11708, General Code, an execution issued and levied within one year after its rendition is necessary to preserve priority of its lien, and this is not done, then it ceases to operate as a lien on the estate of the debtor to the prejudice of any other judgment creditor.

The foregoing quoted statutory provisions must be construed in their relation and applicability to each other, not separately and apart; and so construing them, this court concludes therefrom that the filing of the prescribed certificate of judgment creates a lien upon the lands and tenements of the judgment debtor in the county where filed and that the lien so obtained

continues if the judgment is not allowed to become dormant; but, although continuing to be a subsisting lien, it ceases to be operative as such to the prejudice of any other bona fide judgment creditor at the expiration of one year after its rendition, unless the lienor has complied with Section 11708, General Code.

As said by Judge Ranney in *Corwin* v. *Benham*, 2 Ohio St., 37, at page 39: "The judgment liens are the creations of positive law, without which they cannot exist, and that they can not survive the law which gives them being, are principles too well settled to be drawn in question."

Judge Rockel, as appears in the third paragraph of the syllabus of *Neff, Admr.*, v. *Cox*, 5 O. D. (N. P.), 377, 5 N. P., 413, thus stated the principles of law applicable to judgment liens: "A judgment lien is purely the creature of legislative enactment. It has no other existence. To the common law it was unknown. Such a lien does not *per se* constitute a property right in the land itself, but only gives a right to levy on the same and have it applied to the satisfaction of the judgment."

And as an indisputable corollary thereto, it may be added that in the creation of such a lien such limitations and conditions may be imposed as the General Assembly deems wise and expedient. However burdensome and uncalled-for the retention of Section 11708 of the General Code may seem to those who so view it, the fact remains, it is there, and being there and possessing no ambiguity, it is manifest and must be presumed that the General Assembly intended it to survive and to require compliance therewith.

The lien of the Brownell judgment is therefore prior to those of the Sandusky bank, and the judgment and decree of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

CARPENTER and OVERMYER, JJ., concur.