BOERNER, APPELLEE, *v.* HULLINGER ET AL., APPELLANTS.

(No. 1030—Decided December 4, 1952.)

*Mr. Sylvan H. Wise,* for appellee.
*Mr. I. B. Steele* and *Mr. Gene Garling,* for appellant.

Guernsey, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Allen County, in an action wherein the appellee, Rosemary Boerner, was plaintiff, and the appellant, Cecelia Hullinger, was one of the defendants.

The action is one to have a judgment procured by plaintiff against Bernard M. Hullinger, one of the defendants, adjudicated the first and best lien on certain real estate described in the petition, for the marshalling of liens on said real estate, and for other relief.

In her petition, the plaintiff alleged in substance that on July 20, 1951, she obtained a judgment in the amount of $700 together with interest and costs against Bernard M. Hullinger in case number 40415 in the Common Pleas Court of Allen County; that, thereafter, by virtue of execution issued on said judgment on August 8, 1951, the sheriff of Allen county on August 10, 1951, made a levy on certain real estate described in the petition; that the defendants Cecelia Hullinger and The Central Building & Loan Company of Lima, Ohio, have or claim to have some interest in said real estate; that no part of the judgment in case number 40415 has been paid; and that said judgment and execution constitute a valid lien against said real estate.

The defendant Bernard M. Hullinger was duly served with summons, but did not file any answer therein.

The defendant Cecelia Hullinger filed her answer and cross-petition, in which she admitted plaintiff's judgment in case number 40415, the execution issued thereon, the levy on the real estate described in the petition, her interest and that of The Central Building & Loan Company in said real estate, and denied generally each and every allegation in the petition not so admitted. She alleged further in substance that she is

and since the 7th day of April 1944 has been the owner in fee simple of the real estate described in the petition; that she is not in any way indebted to the plaintiff; that plaintiff has no valid claims, judgments, liens or executions against her or her real estate; and that further proceedings to sell said real estate upon execution would be to her irreparable injury. By way of relief, she prayed that plaintiff be restrained from proceeding further with said sale, that the levy of execution on said real estate be vacated and set aside, that plaintiff's petition be dismissed, and for all other relief necessary and proper in the premises.

The defendant The Central Building & Loan Company filed its answer in which it set forth a certain note executed and delivered to it by the defendants Hullinger, as husband and wife; the amount due and owing on said note; the mortgage upon the real estate described in the petition, executed and delivered to it by said defendants to secure the payment of said note; the recording of said mortgage; and that said mortgage is the first and best lien on said premises. The prayer of its answer was that its lien be declared a first and best lien on the premises and that if a sale of said premises be ordered the said lien be attached to the proceeds of sale.

The plaintiff filed a reply to the answer and cross-petition of the defendant Cecelia Hullinger in which she alleged that ''at the time the note described in the petition herein was executed the defendant, Bernard Hullinger, represented to the plaintiff that he was the owner of the real estate in the petition herein described,'' and that ''at the time plaintiff obtained the judgment on said note, on July 20, 1951, said real estate appeared of record in the recorder's office of Allen county, Ohio, in the name of the defendant Bernard Hullinger and on that date said judgment became a lien on said real estate.''

Upon the pleadings above mentioned, the cause was submitted to the court.

At the trial the parties stipulated that the mortgage of the defendant The Central Building & Loan Company was the first and best lien after taxes on the premises described in the petition.

The evidence introduced at the trial tended to prove the following facts:

The defendants Hullinger, husband and wife, purchased the real estate described in the petition from Homer Inskeep and Lulu Inskeep on land contract. The defendant Cecelia Hullinger made all the payments thereon under said contract, but it is not clear from the evidence as to whether she used her own funds in making such payments. On April 6, 1944, Homer Inskeep and Lulu Inskeep executed and delivered a warranty deed to Bernard M. Hullinger for said premises. This deed was left with Russell T. Graham, the secretary of The Central Building & Loan Company, who caused it to be duly filed for record in the office of the recorder of Allen county, Ohio, at 9:26 a. m. on April 7, 1944, the day following its execution. On the evening of April 6, 1944, Cecelia Hullinger argued with her husband, Bernard M. Hullinger, that she should have been grantee in the deed from the Inskeeps and after discussion it was then agreed by them that the husband, Bernard M. Hullinger, should execute and deliver a deed to her for said premises. Pursuant to this agreement, the husband on the following day, April 7, 1944, did execute and deliver to her a deed conveying the premises to her. After delivery of the deed to her, Cecelia Hullinger left it at the Central Building & Loan Company with Graham, where it remained until July 31, 1951, when she procured it from Graham and filed it for record in the office of the recorder of Allen county, Ohio.

On or about the 24th day of March 1948 the plaintiff

and the defendant Bernard M. Hullinger entered into a partnership for the purpose of carrying on and conducting a laundry business, each making contributions to the capital of said partnership. The defendant Bernard M. Hullinger on or about the 15th day of June 1948 purchased plaintiff's interest in said partnership business at the price of $700, evidenced by the cognovit note of the defendant Bernard M. Hullinger payable to the order of plaintiff, upon which plaintiff on the 20th day of July 1951 procured the judgment against the defendant Bernard M. Hullinger.

Execution upon this judgment was issued on August 8, 1951, and levied upon the premises described in the petition on August 10, 1951, as hereinbefore mentioned.

At the time this judgment was procured the premises described in the petition, upon which execution was subsequently levied, stood of record in the recorder's office of said county in the name of Bernard M. Hullinger.

The execution on said judgment was issued and levied after the deed from Bernard M. Hullinger to Cecelia Hullinger had been filed for record as hereinbefore mentioned.

Plaintiff, at the time she entered into said partnership with the said Bernard M. Hullinger and prior to receiving said cognovit note representing the purchase price of her interest in said partnership, made an inquiry of Hullinger as to the ownership of said premises and was informed by him that he was the owner of the same. She also made inquiry of Graham, secretary of the Central Building & Loan Company, and was informed by Graham that said Bernard M. Hullinger was the owner of said premises.

Plaintiff did not examine or have any one else examine the deed records of said county to ascertain how the title of said premises stood of record.

It is not alleged in the petition herein that a certifi-

cate of judgment was filed in the office of the clerk of the Court of Common Pleas of Allen County, in which court the judgment was rendered on the cognovit note in question, in conformity with the provisions of Section 11656, General Code, and there is no evidence tending to prove that said certificate was filed.

At the conclusion of the trial, the court, among other things, found and adjudged:

1. That there is due the defendant, The Central Building & Loan Company, from the defendants, Bernard M. Hullinger and Cecelia Hullinger, on the promissory note set forth in its answer, $2,576.41, with 5 per cent interest per annum from October 31, 1951, and that the mortgage set forth in said answer is the first and best lien against the premises described in the petition, after taxes and assessments.

2. That there is due plaintiff from defendant, Bernard M. Hullinger, on her judgment $700 with 6 per cent interest per annum from July 20, 1951, together with costs in case number 40415 and costs herein, and that said judgment is the first and best lien on said premises after the mortgage of The Central Building & Loan Company.

3. That unless the defendants, Bernard M. Hullinger and Cecelia Hullinger, shall, within three days from the entry of the decree, pay or cause to be paid to the clerk of court the costs of this case and to the plaintiff and to The Central Building & Loan Company the sums so found due, with interest, the defendants' equity of redemption be foreclosed and said real estate be sold and that an order of sale issue therefor to the sheriff of Allen county, directing him to appraise, advertise and sell said real estate as upon execution, and report his proceedings to the court for further order.

This is the judgment from which the defendant Ce-

celia Hullinger appealed. None of the other parties to the cause appealed.

Defendant, appellant, assigns error in two particulars:

"1. The verdict is contrary to law and the evidence.

"2. The verdict is not sustained by sufficient evidence."

These assignments will be considered together.

Defendant's general contention under her assignments of error is that the plaintiff did not, by virtue of the judgment procured by her on the cognovit note and the levy of execution on said judgment upon the premises described in the petition, acquire or establish any lien on the real estate conveyed to her by her husband, Bernard M. Hullinger, the deed for which was not filed for record until after said judgment had been rendered but before said execution was levied upon said real estate. The plaintiff does not otherwise question the validity of the judgment from which this appeal is taken.

Whatever lien the plaintiff may have on said real estate is wholly dependent upon whether said judgment or the levy of execution thereon had the legal effect of creating a lien in favor of the plaintiff upon said real estate.

In considering this question it must be kept in mind that "judgment liens are the creations of positive law, without which they cannot exist, and that they can not survive the law which gives them being, are principles too well settled to be drawn in question." *Lessee of Corwin* v. *Benham,* 2 Ohio St., 36. See, also, *Waldock* v. *Bedell,* 59 Ohio App., 520, 18 N. E. (2d), 828.

What lien, if any, the plaintiff acquired on said real estate by virtue of her judgment without levy of execution, must be determined from the provisions of Sec-

tion 11656, General Code, the pertinent part of which reads as follows:

"Any judgment or decree rendered by any court of general jurisdiction (including District Courts of the United States) within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time when there shall have been filed in the office of the clerk of the Court of Common Pleas of such county a certificate of such judgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment creditor or creditors and judgment debtor or debtors, the amount of the judgment and costs, the rate of interest (if the judgment provides for interest), and the date from which such interest accrues, the date of rendition of the judgment and the volume and page of the journal entry thereof * * *."

The filing of the certificate in the manner and form prescribed is essential to the creation and establishment of a valid lien upon real estate without levy of execution and an averment of the fact of filing such certificate and the time of such filing is essential to the validity of any petition to enforce such a lien. See *Waldock* v. *Bedell, supra,* and the article by Herbert J. Hollander entitled, "Why Your Judgments May not be Liens," in 16 Ohio Opinions, 141.

Such fact, of course, must be proved in order to warrant relief on a petition to enforce a lien.

As the fact mentioned was neither pleaded nor proved in the instant case the plaintiff failed to establish any lien upon the real estate in question by virtue of her judgment.

It seems odd that under the provisions of Section 11656, General Code, in order to perfect a lien of a judgment upon real estate located in the county in which the judgment is rendered it is necessary to file

a certificate of judgment in the office of the clerk of the court in which the judgment is rendered, but it is clear that this was the intention of the Legislature, as prior to the amendment of said section, effective August 30, 1935, to read as it now reads, it did prescribe that "lands and tenements within the county where the judgment is entered shall be bound for its satisfaction from the day on which such judgment is rendered," which provision was eliminated by the amendment.

The amendment, however, does serve the useful purpose of requiring a special record to be made of all certificates of judgments operating as liens upon real estate.

We will next consider whether the levy of execution upon said real estate created a lien thereon. In considering this question, it must be remembered that the levy of execution was not made until after the deed conveying the real estate to defendant Cecelia Hullinger was filed for record.

It will also be noted that under the provisions of Section 11656-1, General Code, the lands and tenements of a judgment debtor shall be bound with a lien for the satisfaction of a judgment of a court of general jurisdiction within this state, without the filing of the certificate provided for by Section 11656, General Code, from the time when the same are seized in execution.

The judgment debtor in the instant case was the defendant Bernard M. Hullinger and not the defendant Cecelia Hullinger. The levy of execution was not made until after the deed vesting title to said real estate in Cecelia Hullinger was duly filed for record. Consequently, under the explicit terms of Section 11656-1, General Code, the levy of the execution made after the record title to said real estate was no longer in the name of the judgment debtor did not have

the effect of binding said real estate for the payment of said judgment and did not create or constitute a lien thereon.

For the reasons mentioned, the plaintiff did not have any lien by way of judgment or by levy of execution on the real estate described in the petition, and that part of the judgment of the Common Pleas Court finding that plaintiff had a lien on said premises and providing for the enforcement thereof is contrary to law, not being sustained by any evidence.

This cause was decided by the Common Pleas Court and was argued by the plaintiff, appellee in this court, upon the theory that the plaintiff by virtue of her judgment and the levy of execution thereon and her inquiries and the answers thereto with reference to the real estate described in the petition being the property of the defendant Bernard M. Hullinger made at and before the time she accepted the cognovit note of the defendant Bernard M. Hullinger, as representing the purchase price of her interest in the partnership of herself and the said Bernard M. Hullinger, stood in the position of a subsequent bona fide purchaser within the purview of Section 8543, General Code, and, therefore, through her judgment and levy of execution acquired a lien on said real estate.

Section 8543, General Code, reads as follows:

Section 8543 '' [Recording of deeds and instruments for the conveyance or incumbrance of lands]. All other deeds and instruments of writing for the conveyance or incumbrance of lands, tenements, or hereditaments, executed agreeably to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record, they shall be deemed fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase,

no knowledge of the existence of such former deed or instruments.''

Plaintiff cites the case of *Micklethwait* v. *Fulton, Supt. of Banks,* 129 Ohio St., 488, 196 N. E., 166, in support of her argument in this court.

An examination of the report of that case discloses that it does not in any way relate to or involve the interpretation or construction of Section 8543, General Code, and merely determines that:

''Where an owner of real estate executes a deed of conveyance, complete and absolute in form, and deposits same with a person of his own choice for delivery to grantee upon the death of the grantor, such deposit will be deemed to have been made at the grantor's own risk, as to innocent purchasers for value without notice and as to subsequent judgment creditors of grantee who have extended credit in reliance upon the latter's record title to the property, if such deed is thereafter wrongfully recorded, and the conveyance will be deemed valid and absolute.''

That decision does not in any way support plaintiff's argument and contention.

The interpretation to be placed upon Section 8543, General Code, was under consideration in the case of *Dow* v. *Union National Bank,* 87 Ohio St., 173, 100 N. E., 328, wherein it is held:

''Section 8543, General Code, provides the only consequences to follow a failure to file a deed for record, and such failure, unaccompanied by fraudulent representations or conduct by the grantee does not render the deed void as to subsequent creditors of the grantor who do not become purchasers.''

An inspection of the report of this case discloses that the action was one brought by the bank against husband and wife to set aside a deed of certain real estate from the husband to the wife and to subject

same to the satisfaction of a judgment which the bank had recovered against the husband in June 1907 on a note executed by him to the bank on February 18, 1907. The deed in question was dated October 23, 1901, and was filed for record on January 16, 1907, approximately a month before the note was executed and delivered by the husband to the bank. The holding in that case, insofar as it applies to the rights of subsequent creditors, is, therefore, obiter dictum. However, the reasoning upon which the holding is based is clear and convincing and is followed in the case of *Small* v. *Gartner*, 9 Ohio Law Abs., 330, the holding in which we approve as a correct statement of law. The holding is in conformity with the general rule in this state that a judgment creditor does not stand in the position of an innocent purchaser for value, and that such creditor gets only such interest as the judgment debtor has in the property. *Davis* v. *First-Central Trust Co.*, 15 Ohio Law Abs., 3; *Tousley* v. *Tousley*, 5 Ohio St., 78.

Following and applying the decisions mentioned, we hold that the plaintiff does not occupy the position of a subsequent bona fide purchaser, having at the time of purchase no knowledge of the existence of a former deed, and does not have any lien on said real estate, and that the trial court erred in its findings to the contrary.

For the errors hereinbefore mentioned, the judgment of the Common Pleas Court in favor of the plaintiff and against the defendant Cecelia Hullinger is reversed, and as the relief afforded the defendant The Central Building & Loan Company in the judgment in its favor was predicated upon plaintiff having a lien on said premises and said premises being ordered sold to satisfy said lien, said judgment of said company against the defendants Cecelia Hullinger and Bernard M. Hullinger is also reversed; and this court, rendering the judgment the trial court should have

rendered, renders final judgment in favor of the defendant Cecelia Hullinger against the plaintiff Rosemary Boerner, and dismisses plaintiff's petition as against the said Cecelia Hullinger, and reverses said judgment of The Central Building & Loan Company against the defendants Cecelia Hullinger and Bernard M. Hullinger and dismisses, without prejudice, the cross-petition of said company; and this court adjudges further that the plaintiff pay all the costs of this case in the Common Pleas Court and in this court.

*Judgment accordingly.*

MIDDLETON, P. J., and YOUNGER, J., concur.