BASIL, TRUSTEE OF THE BASIL TRUST, APPELLEE, *v.* VINCELLO ET AL., APPELLANTS.

[Cite as Basil *v.* Vincello (1990), 50 Ohio St. 3d 185.]

(No. 89-67—Submitted January 17, 1990—Decided April 18, 1990.)

*Gray, Luria & Belkin* and *Keith E. Belkin,* for appellee.

*David P. Freed Co., L.P.A.,* and *David P. Freed,* for appellants.

MOYER, C.J. The question presented is whether a general judgment creditor may satisfy the unpaid balance of a judgment lien by marshaling a lien against a parcel of property that the debtor conveyed to a third party by means of a defectively executed deed.

The rights and status of the parties must first be defined.

## I

Perrico and Slowey paid $50,887 to Vincello and Teague on April 25, 1979. In exchange Vincello and Teague were to execute a quitclaim deed transferring ownership of the property known as Parcel No. 2. Such deeds have the force and effect of a deed in fee simple to the grantee when duly executed in accordance with R.C. Chapter 5301. R.C. 5302.11. Pursuant to R.C. 5301.01, a deed must be signed by the grantor and such signing must be acknowledged in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. Furthermore, the acknowledgment must be made before a clerk of a court of the state, a county auditor, county engineer, notary public, mayor, or county court judge, "who shall certify the acknowledgment and subscribe his name to the certificate of such acknowledgment."

In this case, the grantors signed the document outside the presence of both witnesses and did not appear before the notary public who certified the acknowledgment. The acknowledgment required by the statute is for the purpose of affording proof of the due execution of the deed by the grantor, sufficient to authorize the register of deeds to record it. It has been held that "a defectively executed conveyance of an interest in land is valid as between

the parties thereto, in the absence of fraud. * * *" (Citations omitted.) *Citizens Natl. Bank* v. *Denison* (1956), 165 Ohio St. 89, 95, 59 O.O. 96, 99, 133 N.E. 2d 329, 332; *Naso* v. *Daniels* (1964), 8 Ohio App. 2d 42, 48, 37 O.O. 2d 48, 52, 220 N.E. 2d 829, 833. In *Citizens,* an improperly acknowledged mortgage was recorded, and the court held that where a deed is executed as the result of fraud, such instrument is ineffective to convey the land. Legal title to the property is not conveyed.

Here, the trial court found from the evidence that no fraud had been perpetrated as between Perrico and Slowey and the Basil Trust. The record supports that finding, although the deed was defectively executed. We find no abuse of discretion and will not disturb this finding of fact. See *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 410, 461 N.E. 2d 1273, 1277. Nevertheless, because the deed was not executed in accordance with R.C. 5301.01 and therefore was defective, legal title did not pass from Vincello and Teague to Perrico and Slowey. The question then is what interest, if any, in Parcel No. 2 did Vincello and Teague pass to Perrico and Slowey?

Vincello and Teague agreed to convey their interest in Parcel No. 2 in exchange for a price. Perrico and Slowey performed their part of the agreement by paying the full consideration required under the contract, $50,887, but received neither title nor possession in exchange. In such instances, courts have created an equitable interest in the purchaser as having a cause of action for breach of an executory contract or as having a "vendee's lien" over the property itself. See *Reilly* v. *Griffith* (1947), 141 N.J. 154, 56 A. 2d 502, affirmed (1948), 142 N.J. 724, 61 A. 2d 235; *Schuman* v. *Bd. of Commrs. of Muskogee Cty.* (1939), 184 Okla. 339,

87 P. 2d 151; *West* v. *Holman* (1931), 223 Ala. 114, 134 So. 667; Annotation (1978), 82 A.L.R. 3d 1040, Right of Vendee under Executory Contract to Lien for Amount Paid on Purchase Price as against Subsequent Creditors of or Purchasers from Vendor, Section 11. The "lien" is based on the assumption that the vendor still holds the legal title, either because he has never conveyed it or because some act has been committed which justifies rescission of the contract and return of the purchase price. See *Reed* v. *Sixth Judicial Dist. Court* (1959), 75 Nev. 338, 341 P. 2d 100. At most then, it can be said that Perrico and Slowey have an equitable interest in the property still titled in Vincello and Teague that was created upon payment of consideration in April 1979, or they have a cause of action for breach of contract arising when the defective deed was executed in September 1979.

II

The Basil Trust is a general judgment creditor that properly obtained a certificate of judgment from the clerk of courts to satisfy the debt owed by Vincello and Teague for default on the mortgage given it on Parcel No. 12. See R.C. 2329.02. The certificate of judgment was filed on January 23, 1981, and we must assume the truth of plaintiff's assertion in the complaint that the Basil Trust obtained a judgment against any interest Vincello and Teague still had in Parcels 1 through 12. We are required to determine the effect the Basil judgment lien has upon the interest of Perrico and Slowey since the judgment lien against Vincello and Teague is based on an *in personam* debt.

R.C. 5301.25(A) provides in pertinent part: "All deeds, * * * and instruments of writing properly executed for conveyance or encumbrance

of lands, * * * shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument." This statute is designed to protect subsequent bona fide purchasers of property. See *University Hills, Inc.* v. *Patton* (C.A.6, 1970), 427 F. 2d 1094, 1100; *Corwine* v. *Thompson Natl. Bank of Putnam* (C.A.6, 1900), 105 F. 196.

However, the law is clear that judgment lien creditors are not bona fide purchasers for value. The general rule was stated in *University Assoc.* v. *Sterling Finance Co.* (1973), 37 Ohio App. 2d 17, 19, 66 O.O. 2d 32, 33, 305 N.E. 2d 924, 925: " 'Accordingly, the interest of a person to whom a judgment debtor has conveyed real estate before the attachment of the judgment or execution lien is preferred to the interest of the judgment creditor, unless such priority is affected by the provisions of recording statutes, or statutes relating to fraudulent conveyances, or the conveyance is void for other reasons, or the grantee is estopped from asserting his claim as against the judgment creditors.' * * *" (Emphasis deleted.) See, also, *Dow* v. *Union Natl. Bank* (1912), 87 Ohio St. 173, 100 N.E. 328; *Miller* v. *Albright* (1899), 60 Ohio St. 48, 53 N.E. 490, paragraph one of the syllabus.[6]

The trial court found that no fraud was perpetrated upon the Basil Trust by reason of the transaction between Vincello and Teague and Perrico and Slowey. Neither was the transfer of Parcel No. 2 made for the purpose of defrauding the Basil Trust as a judgment creditor since Basil had not achieved that status at the time the transactions were executed. See R.C. 1336.07 and *Wagner* v. *Galipo* (1990), 50 Ohio St. 3d 194, 553 N.E. 2d 610. Nor was Parcel No. 2 a part of the security given in exchange for a loan or mortgage between the Basil Trust and Vincello and Teague. Lake County Federal Savings & Loan had the first and paramount mortgage on Parcel No. 2 as well as possession of the property.

Basil contends that Perrico and Slowey may not seek equity from the courts because they do not come to court with "clean hands." The maxim, "He who seeks equity must come with clean hands," requires only that the party must not be guilty of reprehensible conduct with respect to the subject matter of his suit. "* * * [A] court of equity is not an avenger of wrongs committed at large by those who resort to it for relief, however careful it may be to withhold its approval from those which are involved in the subject-matter of the suit and which prejudicially affect the rights of one against whom relief is sought." *Kinner* v. *Lake Shore & Michigan So. Ry. Co.* (1904), 69 Ohio St. 339, 344-345, 69 N.E. 614, 615. See, also, *Goldberger* v. *Bexley Properties* (1983), 5 Ohio St. 3d 82, 5 OBR 135, 448 N.E. 2d 1380. It does not appear from the record that Perrico and Slowey's conduct, *i.e.*, receiv-

---

[6] "The equitable lien of a vendor for the unpaid purchase money for land sold and conveyed is paramount to the liens of judgments recovered against the vendee on debts contracted by him after his deed has been placed upon record, although the creditors were without notice of the equitable lien; and this priority is not affected by the levy on the land of executions issued on the judgments." *Miller* v. *Albright, supra.*

ing an improperly executed deed with respect to Parcel No. 2, rises to such a level of reprehensible conduct which would estop their equitable chose in action or interest in the property.

### III

Having found Perrico and Slowey's equitable interest to be valid, we consider then the issue of priority. Do the recording statutes protect the Basil Trust as a judgment creditor? The answer must be no.

It is undisputed that by force of R.C. 2329.02, as between two judgment lien creditors, the lien filed prior in time takes priority over the subsequently filed lien. Similarly, pursuant to R.C. 5301.23, "* * * [i]f two or more mortgages are presented for record on the same day, they shall take effect in the order of presentation. The first mortgage presented must be the first recorded, and the first recorded shall have preference." Clearly, the transactions in dispute here do not fall into either category contemplated by these two provisions.

R.C. 5301.03 is a notice statute which permits creation of an equitable interest, and does not protect judgment creditors who have not relied upon the existence and/or ownership of the subject real estate in the extension of credit. *Bank One of Milford* v. *Bardes* (1986), 25 Ohio St. 3d 296, 297-298, 25 OBR 346, 347, 496 N.E. 2d 475, 476. " '* * * [The statute] provides that certain language in a deed or mortgage which purports to create an equitable interest will not be sufficient to notify other parties of limitations on the grantee's or mortgagee's powers. Noncompliance with the statute does not defeat the creation of an equitable interest: it simply prevents enforcement of that interest against the parties named in the statute. Those parties include " '* * * bona fide pur-

chasers, mortgagees, lessees, and assignees for value * * *," but not judgment creditors.' " *Id.* (Citing to *Marital Trust of Casto* v. *Lungaro* [1986], 22 Ohio St. 3d 298, 22 OBR 467, 490 N.E. 2d 599.) See, also, *Sinclair Refining Co.* v. *Chaney* (1961), 114 Ohio App. 538, 20 O.O. 2d 88, 184 N.E. 2d 214; *Boerner* v. *Hullinger* (1952), 94 Ohio App. 51, 51 O.O. 270, 114 N.E. 2d 598.

We conclude that R.C. 2329.01 (former G.C. 11655) determines the issue. It provides: "Lands and tenements, including vested legal interests therein, permanent leasehold estates renewable forever, and goods and chattels, not exempt by law, shall be subject to the payment of debts, and liable to be taken on execution and sold as provided in sections 2329.02 to 2329.61, inclusive, of the Revised Code." The statute, in its predecessor form, G.C. 11655, was construed by this court in *Culp* v. *Jacobs* (1930), 123 Ohio St. 109, 174 N.E. 242.

G.C. 11655 was amended (111 Ohio Laws 366) to insert the word "legal," so that the section read: "Lands and tenements, including vested legal interests therein, permanent leasehold estates renewable forever, and goods and chattels, not exempt by law, shall be subject to the payment of debts, and liable to be taken on execution and sold * * *." In *Culp,* the court held that this amendment was enacted to specifically limit the interest in lands and tenements liable to be taken on execution solely to "vested legal interests." To permit equitable interests to be liable on execution would disregard the meaning of the statute and intent of the General Assembly. "[E]quitable interests in real estate cannot be levied upon and sold under execution." *Id.* at 114, 174 N.E. at 243. See, also, *Bank of Ohio* v. *Lawrence* (1954), 161 Ohio St. 543, 53 O.O. 403, 120 N.E. 2d 88,

paragraph one of the syllabus: "Certificate of a judgment filed in the office of the Clerk of the Common Pleas Court in accordance with Section 11656, General Code (Section 2329.02 Revised Code), does not cause such judgment to attach as a lien on the equitable interest of the judgment debtor in land under a land contract."

The court of appeals relied on *Standard Oil Co.* v. *Moon* (1930), 34 Ohio App. 123, 170 N.E. 368. We find that case distinguishable and not controlling here. In *Standard Oil Co.,* Moon was the owner in fee simple of a certain property. Moon executed a land contract to Smith, who took possession and filed his contract for record. Moon then *assigned* his remaining interest (the legal title) to West Side Banking Company as security for a loan of $500. This assignment was not recorded. Nearly five months later, Moon executed and delivered a mortgage in favor of Home Building Savings & Loan Company upon this same property. The mortgage was duly recorded. The question in the case was, who had priority over the purchase money owing from Smith to Moon as between West Side Banking Co. and Home Building Savings & Loan?[7] Clearly under the recording statutes, Home Building Savings & Loan could not and did not have notice of the unrecorded assignment. Home Building Savings & Loan's mortgage was recorded first and therefore took priority over the assignment made to West Side Banking Co. This, however, was a priority against any interest remaining in Moon, not Smith, the holder of an equitable chose in action. The court did not hold that the levy of judg-

ment should be against Smith's equitable interest.

Accordingly, we hold that the priorities of interest covered by these statutes have no effect upon the case before us. Perrico and Slowey have an "equitable interest" in either the land still owned by Vincello and Teague, or an equitable chose in action for breach of contract against them individually. We follow this court's ruling in *Culp* v. *Jacobs, supra,* and hold that equitable interests in real estate cannot be levied upon or sold under execution.

## IV

Accordingly, the judgment of the court of appeals is reversed, and the trial court's decision in favor of defendants Perrico and Slowey is reinstated.

*Judgment reversed.*

SWEENEY, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

DOUGLAS, J., dissenting. A reading of the facts in the case at bar and the majority's conclusions drawn from those facts should send a chill through real estate lawyers, bankers, investors, title companies and anyone with an interest in searching real estate titles.

Vincello and Teague were the title owners of several parcels of land. In early 1979, Vincello and Marvin Basil negotiated a loan agreement from the Basil Trust ("Basil") to Vincello. As part of the negotiations, on January 10, 1979, Vincello gave Basil a finan-

---

[7] The court also stated that an executory contract (a land installment contract) for purchase and sale of land is not an instrument entitled to be recorded. This has changed under the present statutory scheme. See R.C. 5313.01 *et seq.* and 5301.25. Smith had an equitable chose in action under contract against Moon.

cial statement in which Vincello listed his income and property interests. According to the financial statement, Vincello owned one-half interest in a particular parcel of land known as Parcel No. 2. The interest in Parcel No. 2 was represented to be worth at least $140,000. On March 22, 1979, Vincello, Teague and Basil reached a final agreement concerning the loan.

On April 25, 1979, just over one month after the agreement with Basil had been reached, Vincello and Teague received $50,887 from Perrico and Slowey. In exchange for the $50,887, Vincello and Teague signed a quitclaim deed which purported to transfer Parcel No. 2 to Perrico and Slowey. Hence, Parcel No. 2 which approximately three months earlier had been represented to be worth at least $140,000 was attempted to be transferred for $50,887. Additionally, the quitclaim deed was backdated to show an effective date of November 20, 1978. However, as the majority correctly notes, the quitclaim deed was ineffective in passing legal title to Perrico and Slowey.

Vincello and Teague defaulted on their loan agreement with the Basil Trust. Consequently, Basil obtained a judgment lien against Vincello and Teague and then filed a certificate of judgment with the clerk of courts on January 23, 1981. In February 1981, Basil filed a complaint alleging that it had obtained a judgment lien against the interests of Vincello and Teague in certain parcels of property, including Parcel No. 2. *In December 1981,* the faulty quitclaim deed which purported to transfer Parcel No. 2 to Perrico and Slowey was recorded.

Based upon these facts, the majority holds that Perrico and Slowey have an "equitable interest" in Parcel No. 2, or an equitable chose in action for breach of contract against Vincello and Teague and, hence, these *equitable* interests may neither be levied upon nor sold under execution. In doing so, today's majority misconstrues this case and, as a result, allows Vincello and Teague to thwart the efforts of their judgment creditor when the creditor had no knowledge of an invalid conveyance because the invalid conveyance was neither recorded nor attempted to be enforced.

The majority concludes, and I agree, that R.C. 2329.01 determines the issue in the case at bar. R.C. 2329.01 provides: "Lands and tenements, including vested *legal* interests therein * * * shall be subject to the payment of debts, and liable to be taken on execution and sold * * *." (Emphasis added.) The majority also concludes, and I agree, that Vincello and Teague still held *legal* title to Parcel No. 2 after the execution of the faulty quitclaim deed because the deed failed to transfer *legal* title to the property.

In my judgment, Basil properly executed on Vincello's and Teague's "vested *legal* interests" in Parcel No. 2. Hence, under R.C. 2923.01, the vested legal interests of Vincello and Teague are proper subjects for the payment of their debts and, accordingly, may be taken on execution and sold. While I agree with today's majority that Perrico and Slowey should have an action (legal or equitable or both) against Vincello and Teague, it does not follow that Perrico's and Slowey's chose in action somehow affects the rights of a judgment creditor that has first executed on the *legal* interests of its judgment debtors.

Apparently the majority of this court believes that Basil has attempted to levy on Perrico's and Slowey's equitable chose in action or their "equitable interest" in Parcel No. 2. That is incorrect. It is the *legal* in-

terests of Vincello and Teague that Basil seeks to reach. In ruling otherwise, the majority has misconstrued the entire case before this court. In doing so, the majority's holding establishes a dangerous precedent that will foster and reward secret or illicit real estate transactions, thereby having the potential to bring havoc to the real estate industry.

Seemingly, the court of appeals, while seeing many of these same problems without specifically so articulating them, reached the same conclusion and the judgment of that court should be affirmed. To do otherwise leads me to the conclusion that the basic law we all learned so long ago, to wit: that recording a document with the county recorder is "notice to all the world," has today a new meaning — or no meaning at all. It seems that the answer now is to secretly prepare a quitclaim deed, backdate it even though that is a violation of law, have it signed but not in the presence of witnesses or a notary, have the purported grantee not record it and then later argue that you have no real interest in the property to be levied against. What a sweet deal — but very dangerous, I think — to be sanctioned by this court!

For the foregoing reasons, I must respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.