In re Margo A. LEPELLEY, Thomas A. Lepelley, Debtors.

Brian A. Bash, Trustee, Plaintiff,

v.

Thomas A. Lepelley, et al., Defendants.

Bankruptcy No. 98–13062.
Adversary No. 98–1381.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 11, 1999.

803

Lauren A. Helbling, Cleveland, Ohio, for plaintiff.

Robert C. Bianchi, Parma Hts., Ohio, Stephen D. Hobt, Cleveland, Ohio, for debtor.

*MEMORANDUM OF OPINION
AND ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

The matter before the court is the Trustee's complaint to avoid a mortgage pursuant to 11 U.S.C. § 544 and a cross claim of the Debtors, Mango and Thomas Lepelley ("Debtors") against Novastar Mortgage Inc. ("Novastar"). The pertinent facts in this case are not in dispute, except on the issue of which individuals were present at a mortgage signing on April 9, 1998. The parties have stipulated as follows:

1. There exists equity beneficial to the estate in the subject property beyond the $46,000 payoff to Household Finance Company ("HFC")

2. The mortgage which was executed between the Debtors and HFC was executed in accordance with Ohio law.

Upon the conclusion of a trial proceeding held March 30, 1999, an examination of the evidence adduced, and the record, generally, the following additional findings of fact and conclusions of law are hereby rendered.

## JURISDICTION

Core jurisdiction is acquired for the determination of the proceedings pursuant to provisions of 28 U.S.C. § 157(b), § 1334, and General Order No. 84 of this district.

## FACTS

In an effort to refinance their home mortgage, the Debtors obtained a loan from Novastar which was intended to be secured by their personal residence located at 7602 Ridgefield Avenue, Parma, Ohio 44129. (Thomas Lepelley, Direct). On April 9, 1998, the Debtors executed a real estate Mortgage ("Mortgage") with Novastar for the purpose of securing a loan in the principal amount of $103,000. (P's Ex. # 1). On the Mortgage appears the signatures of Thomas and Mango Lepelley and the signatures of one Jennifer Kyzer ("Kyzer") and one Kimberly K. Snyder ("Snyder") as witnesses. Id. The Mortgage also contains an acknowledgment by the notary public, Kyzer. Id.

At trial, the Trustee examined both Debtors. The testimony given by Margo and Thomas Lepelley was credible. Thomas Lepelley testified that during the afternoon of April 9, 1998 he and his wife executed the Mortgage in their home while sitting at their dinette table. (Thomas Lepelley, Direct). He further testified that a woman who represented CXT Title Co. on behalf of Novastar was the only other individual present at the signing of the Mortgage. Id. He described this woman as having extremely long fingernails and blonde hair. Id. Kyzer met this description. Margo Lepelley's testimony was consistent with her husband's testimony and she further testified that the signing occurred at approximately 5:00 p.m. on April 9, 1998. (Margo Lepelley, Direct).

In addition to the testimony of the Debtors, the Trustee also examined Jennifer Kyzer. The testimony given by Kyzer was credible. Kyzer testified that she is a notary public and that between March and April of 1998 she was employed by Express Closing Service ("Express") to close various loans in her capacity as notary public. (Kyzer, Direct). Kyzer testified that she recognized the Lepelleys in the courtroom, and that between 4:00 and 5:00 p.m. on April 9, 1998 she arrived at their home and waited in the driveway for the Debtors to return home. Upon their arrival, she and the Debtors executed the documents without a second witness present. Kyzer further testified that she was trained by Snyder, a principal of Express. Her training consisted of less than one week of accompanying Snyder or Snyder's father on other closings. Following this training, she closed between thirty and forty loans without Snyder's supervision. Neither Snyder nor anyone other than the Debtors and herself were present at the April 9, 1998 closing. Finally, Kyzer testi-

fied that Express did not have a procedure for obtaining additional witnesses, but relied on the borrowers to supply their own second witness. Id. In the absence of a second witness, the documents would be brought back to the Express office and signed by either Snyder or another principal named Scott.

Snyder testified on behalf of Novastar. She testified that she did not recall the April 9, 1998 closing but that the mortgage appeared to be valid on its face. (Snyder, Direct). While Snyder testified that the Debtors, who were present in the Courtroom, appeared very familiar to her, she admitted that everyone appears familiar to her and that she has no personal knowledge of the subject closing. She further testified that Kyzer is a disgruntled former employee who was terminated due to complaints from various title companies in reference to her appearance. (Snyder, Cross).

The Trustee asserts that the Mortgage was defectively executed, as it was not executed in the presence of two witnesses as required under O.R.C. § 5301.01. Under provisions of 11 U.S.C. § 544, the Trustee further asserts that the Mortgage is avoidable as to the Trustee since it was unperfected as of the petition filing date.

Novastar concedes that it possesses a first mortgage lien on the subject property, but denies that the mortgage is avoidable. In addition, Novastar asserts that if the Court determines that the subject mortgage is avoided, Novastar has a claim pursuant to 11 U.S.C. § 550(e) for the $46,262.09 HFC mortgage paid off through the refinancing. The Debtors assert in their crossclaim that, in the event the Mortgage is avoided, they have a cause of action against Novastar based on fraud, negligence, and breach of contract. Novastar asserts that the Debtors failed to plead fraud with specificity as required by Fed.R.Civ.P. 9(b), that it owed no duty to the Debtors to properly perfect its securi-

ty, and that there was no breach of contract.

## ISSUES

1. Whether the subject Mortgage constitutes a voidable interest against the Debtors' bankruptcy estate?

2. Whether Novastar or the Debtors have a lien on the subject property pursuant to 11 U.S.C. § 550(e)?

3. Whether the Debtors are entitled to judgment against Novastar in fraud, negligence, and breach of contract?

## DISCUSSION

ISSUE 1: *Whether the subject Mortgage constitutes a voidable interest against the Debtors' bankruptcy estate?*

The Court in *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76 (6th Cir. BAP 1999), addressed the issue of whether a Chapter 7 trustee could avoid a mortgage pursuant to § 544(a) as a result of the improper execution of the mortgage under Ohio law.[1] The *Zaptocky* Court noted in part:

Section 544(a) of the Bankruptcy Code grants a trustee extraordinary "strong arm" powers to avoid certain transfers and obligations of a debtor:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

---

1. Ohio Revised Code § 5301.234 was enacted on May 31, 1999. However, this statute is not applicable to this matter as the trial was concluded prior to the statute's enactment.

contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a) (West 1998).

Applicable state law determines the extent of the Trustee's rights pursuant to § 544(a). *Owen–Ames–Kimball Co. v. Michigan Lithographing Co. (In re Michigan Lithographing Co.)*, 997 F.2d 1158, 1159 (6th Cir.1993) ("State law governs who may be a bona fide purchaser."). Accordingly, the Trustee can prevail only if, under Ohio law, a person with the status described in § 544(a)(1), (2), or (3) as of the commencement of the case could avoid [the mortgagee's] interest in the Debtors' property under the mortgage.

"A ... mortgage ... shall be signed by the ... mortgagor[s] .... The signing shall be acknowledged by the ... mortgagor[s] ... in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation." Ohio Rev.Code Ann. § 5301.01 (Anderson 1998) (emphasis ours). Section 5301.01 continues: "The signing shall be acknowledged by the ... mortgagor[s] ... before a ... notary public ... who shall certify the acknowledgment and subscribe his name to the certificate of the acknowledgment." Id. "The acknowledgment required by [§ 5301.01] is for the purpose of affording proof of the due execution of the [instrument] by the grantor, sufficient to authorize the register of deeds to record it." *Basil v. Vincello,* 50 Ohio St.3d 185, 553 N.E.2d 602, 606 (1990).

The *Zaptocky* Court further held:

The effect of improperly executing a mortgage is governed by Ohio Revised Code § 5301.25(A), which provides:

All ... instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments ... shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument.

Ohio Rev.Code Ann. § 5301.25(A) (Anderson 1998) (emphasis ours).

By providing that only properly executed instruments may be recorded and that an unrecorded instrument is fraudulent as to any subsequent bona fide purchaser taking without notice, the statute protects subsequent purchasers from improperly executed instruments and properly executed but unrecorded instruments alike. "Under the provisions of Section 5301.25, Revised Code, a defectively executed mortgage, although recorded, does not establish a lien with priority over a properly executed mortgage which is recorded subsequently; and the defective execution may be provided by evidence of defects which are not apparent on the face of the instrument." *Citizens Nat'l Bank v. Denison,* 165 Ohio St. 89, 133 N.E.2d 329 (1956), paragraph one of the syllabus. Accordingly, a mortgage which is not properly witnessed in accordance with § 5301.01 is not entitled to be recorded pursuant to § 5301.25(A) and, even if recorded, does not prevail against a subsequent

bonafide purchaser who takes without notice of the prior encumbrance. Id.; *Amick v. Woodworth,* 58 Ohio St. 86, 50 N.E. 437 (1898), paragraph two of the syllabus ("A mortgage with but one attesting witness ... is not entitled to record, nor valid, though admitted to record, as against a subsequent properly executed and recorded mortgage."). See also *Basil v. Vincello,* 50 Ohio St.3d 185, 553 N.E.2d 602, 606 (1990) (stating "[t]he acknowledgment required by [§ 5301.01] is for the purpose of affording proof of the due execution of the deed by the grantor, sufficient to authorize the register of deeds to record it," and holding that a quitclaim deed signed by the grantors out of the presence of the attesting witnesses failed to pass legal title); *Coshocton Nat'l Bank v. Hagans,* 40 Ohio App. 190, 178 N.E. 330 (1931) (holding an improperly witnessed mortgage invalid as against a subsequently recorded valid mortgage); *Parker Fin. v. Matthews,* No. 97CA652, 1999 WL 74686, *4 (Ohio App.4th Dist. 1999) ("A failure to comply with these statutory prerequisites [of § 5301.01] renders a mortgage invalid insofar as any subsequent lienholder in the premises.").

The subject mortgage is, facially, a validly executed mortgage under applicable Ohio law (O.R.C. § 5301.01). Thusly, it is to be accorded a presumption of validity, unless overcome by persuasive evidence to the contrary. *See, Coshocton National Bank v. Hagans,* 40 Ohio App. 190, 178 N.E. 330 (1931); *In re Todd,* 70 B.R. 204, 207 (Bankr.N.D.Iowa 1986). Herein, the Trustee has overcome the presumption of validity by clear and convincing evidence. Both the Debtors and Kyzer were credible witnesses who testified that only the Debtors and Kyzer (the Notary) were present at the April 9, 1998 mortgage closing. Novastar presented the testimony of Snyder to refute the Trustee's contention. Snyder, however, does not have personal recollection of the events surrounding the mortgage closing. This factor is of particu-

lar significance since greater weight should be given to the Debtor's awareness and recollection of who attended a mortgage execution in their own home. Of even greater import is the Notary's acknowledgment which, effectively, attests to who was present before her at the moment of the mortgage's execution. Herein, the notary (Kyzer) had a specific recollection that Snyder was not in attendance during the document's execution, notwithstanding that her (Snyder's) signature appears on the document. The combination of these factors clearly evinces that the subject mortgage was executed in a defective manner and is avoidable under § 544 of the Bankruptcy Code. Accordingly, the Trustee has met the requisite burden of proof that the subject mortgage was not properly witnessed in accordance with Ohio law. Accordingly, the subject mortgage is void under provisions of § 544(a) of the Bankruptcy Code.

ISSUE 2: *Whether Novastar or the Debtors have a lien on the subject property pursuant to 11 U.S.C. § 550(e)?*

As determined above, the subject mortgage's execution was defective under Ohio Law and avoidable under § 544(a) of the Bankruptcy Code. Avoidances by a trustee, however, are not without limitations. Section 550 provides the extent of a transferee's liability on an avoided transfer.

Section 550(a) of the Bankruptcy Code permits the Trustee, to the extent a transfer is avoided, to recover, for the benefit of the estate, either the property transferred or, if the court orders, the value of the property transferred. However, § 550(e) provides that:

> (e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—
>
> (A) the cost, to such transferee, of any improvement made after the

transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

In this proceeding, the property transferred was a security interest in the principal residence of the Debtors. As the Debtors are not transferees, but rather are "transferors", they cannot have a lien on the transferred property pursuant to § 550(e).

Relying upon provisions of § 550(e) of the Code, Novastar asserts that its payment of a prior mortgage held by HFC (See Ex. G.) constituted an "improvement" under 11 U.S.C. § 550(e)(2)(D) which may be asserted as a lien against estate property under § 550(e)(1)(A).

■■■ Under § 550(e)(1), a good faith transferee from whom the trustee may recover is afforded a lien under prescribed circumstances. One of those circumstances covers improvements made by the transferee after the transfer occurs. The term "improvement" is broadly defined to include payments that the transferee makes to reduce liens on the property. For there to exist an "improvement" as defined in § 550(e)(2)(D), the moving party must demonstrate that satisfaction of the lien increased the value of the property transferred. *See, Chrystler v. Mersman Tables, Inc. (Matter of Furniture Den, Inc.),* 12 B.R. 522, 527 (Bankr.W.D.Mich. 1981). Any increase in the value of the property is to be determined from the point of view of the Trustee and the Bankruptcy Estate. *Id.* In this matter, the parties stipulated that the HFC mortgage was executed in accordance with Ohio law. As a properly executed and recorded mortgage the HFC mortgage would have been superior to the Trustee absent the Debtor's refinancing of their home. Accordingly, Novastar's satisfaction of the HFC mortgage was an improvement because it increased the value of the property by extinguishing a lien which would have been superior to the Trustee's status pursuant to 11 U.S.C. § 544(a), but for the refinancing. *See also, In re Jones,* 20 B.R. 988, 995–96 (Bankr.E.D.Pa.1982); *In re Brown Family Farms, Inc.,* 80 B.R. 404, 413 (Bankr.N.D.Ohio 1987); *In re Strom,* 46 B.R. 144, 150 (Bankr.E.D.N.C.1985); *In re Brown Iron & Metal, Inc.,* 28 B.R. 426, 431 (Bankr.E.D.Tenn.1983). Herein, there is no dispute that Novastar paid off a first lien held by HFC, as part of the Debtors' loan refinancing (Ex. G). The parties further stipulated that the lien held by HFC was a valid lien. Additionally, Novastar's asserted position as a "good faith transferee" is unchallenged, for purposes of § 550(e)(1).

Novastar contends that it is a good faith transferee as it was unaware that Express improperly executed the mortgage. Relying upon provisions of § 550(e) of the Code, Novastar asserts that its payment of a prior mortgage held by HFC (See Ex. G) constituted an "improvement" under 11 U.S.C. § 550(e)(2)(D) which may be asserted as a lien against estate property under § 550(e)(1)(A). At trial, Novastar conceded that the Debtors independently pay property taxes and that taxes and insurance have not been paid by Novastar.

Accordingly, Novastar has met its burden of proof that it is a "good faith transferee". *See, IRS v. Nordic Village, Inc. (In re Nordic Village, Inc.),* 915 F.2d 1049, 1055 (6th Cir.1990), *rev'd on other grounds,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181.

■ The Court must next determine whether the asserted "improvement" was made after the transfer occurred. On this point, the parties are in disagreement. The Trustee asserts that Novastar's lien payment to HFC was not an eligible "improvement" under § 550(e)(2)(D) as the payment occurred prior to the transfer and not after as is required under § 550(A). Novastar contradicts that assertion by its contention that its disbursement to HFC actually occurred on April 14, 1998, following the Debtors' granting of their mortgage to Novastar on April 9, 1998. In this regard, the following chronology of events is undisputed:

1) The Debtors' refinancing loan with Novastar closed on April 9, 1998;

2) The parties (Trustee and Novastar) acknowledged that HFC's lien payment was distributed on April 14, 1998;

3) The subject mortgage was recorded on April 20, 1998.

The Trustee argues that the transfer did not take place until the mortgage was recorded on April 20, 1998. Novastar disagrees with that interpretation of "transfer" by contending the transfer occurred on April 9, 1998 when the Debtors granted Novastar their mortgage as part of refinancing requirements. The term "transfer" is broadly defined under the Bankruptcy Code to mean, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." See, 11 U.S.C. § 101(54). From this broad definition, it is clear that a transfer of property interest occurred on April 9, 1998 when the Debtors executed a mortgage with Novastar, as that execution constituted the transaction of an interest in property including retention of title as a security interest. Thusly, the pay-off of HFC's first lien mortgage was, indeed made after the transfer occurred and thereby constitutes an eligible "improvement" for purposes of § 550(e)(1). Accordingly, Novastar, under § 550(e)(1) is afforded a lien on the property recovered by the Trustee to the limited extent allowed under § 550(e)(1)(A) and (B).

ISSUE 3: *Whether the Debtors are entitled to Judgment against Novastar in fraud, negligence and breach of contract?*

The Debtors have failed to demonstrate a cause of action arising from Novastar's failure to properly perfect its mortgage. The Debtors' cause of action is based on breach of contract, negligence and fraud. The *Zaptocky* Court stated:

However, [the mortgagee] is not left without recourse under the improperly executed mortgage. Although it cannot take priority over the interest of a subsequent mortgage properly executed according to § 5301.01 and recorded pursuant to § 5301.25(A), a defectively executed mortgage is nonetheless effective between the parties in the absence of fraud. *Basil*, 553 N.E.2d at 606; *Denison*, 133 N.E.2d at 332; *Amick v. Woodworth*, 58 Ohio St. 86, 50 N.E. 437, paragraph three of the syllabus (holding that one who satisfies a prior encumbrance gains an equitable interest in the property). "The reasoning behind such a rule is to bind the parties to that which they intended. The purpose of [§ 5301.01] is to provide evidence of execution and authority for recordation. It is not to provide a way of escape for a party who later wishes to renege on his agreement." *Seabrooke v. Garcia*, 7 Ohio App.3d 167, 454 N.E.2d 961, 964 (1982). See also *In re Downs*, 205 B.R. 93, 96 (Bankr. N.D.Ohio 1996) (applying *Seabrooke* to find a defectively witnessed deed valid between the parties). Where a grantee has given consideration but legal title was not conveyed because of defects in execution, the grantee obtains an equi-

table interest in the real property. *Basil*, 553 N.E.2d at 606.

232 B.R. 76, 82–83 (6th Cir. BAP 1999).

 The Debtors have failed to demonstrate a contractual duty owed by Novastar to the Debtors for Novastar to properly perfect its mortgage. The Mortgage (P's ex. # 1) and the Note (D's ex. A) are silent as to any contractual duty of Novastar to properly perfect its mortgage.

Under Ohio law, an action for negligence has three essential elements: (1) the existence of a duty owing by the Defendant to the Plaintiff; (2) the Defendant's failure to discharge that duty and (3) injury to the Plaintiff proximately resulting from such failure. *See Vasu v. Kohlers, Inc.*, 145 Ohio St. 321, 61 N.E.2d 707 (1945). The record is silent to demonstrate the establishment of these required conjunctive elements. Most importantly, the Debtors have failed to demonstrate a duty of care or a fiduciary duty owed by Novastar to the Debtors. The reasoning of *Zaptocky* supports the non-existence of such a duty. The perfection of a mortgage preserves the mortgagee's ability to pursue the collateral which secures the debt owed by the mortgagor. Once the mortgage is avoided, the lender no longer has a secured source to satisfy the amounts loaned to the mortgagor. While, the failure to properly perfect a mortgage may cause hardship for the mortgagor, perfection of a mortgage is for the principal benefit of the lender and not the debtor.

Further, the Debtors failed to plead fraud with specificity as is required under F.R.Civ.P. 9(b) as made applicable to adversary proceedings pursuant to F.R.Bankr.P. 7009. Accordingly, the Debtors have failed to demonstrate a cause of action under breach of contract, negligence or fraud.

Accordingly, the subject mortgage is void pursuant to provisions of § 544(a)(1) of the Bankruptcy Code. Under provisions of § 550(e)(1), Novastar is provided a lien thereunder to the extent of its aforementioned improvement. The Debtor's cross-claim is denied. Each party is to bear its respective costs.

IT IS SO ORDERED.